# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 08-12001 (CSS) |
| Portola Packaging, Inc., et al.,[1] ) | Jointly Administered |
| ) | |
| Debtors. ) | Re: Docket Nos. 17, 49, and 164 |
| ) | |
| ) | Hearing Date: October 14, 2008, at 3:00 p.m. ET |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING THE DEBTORS' SECOND AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Portola Packaging, Inc. and certain of its subsidiaries, as debtors and debtors in

possession (collectively, the "Debtors") having:[2]

      a.      commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § § 101-1532 (as amended, the "Bankruptcy Code") on August 27, 2008 (the "Petition Date");

      b.      continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

      c.      filed, on the Petition Date, the *Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 16] (the "Original Plan") and the *Disclosure Statement for Debtors' Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 17] (the "Disclosure Statement");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Portola Packaging, Inc. (2719); Great Lakes Sales Associates, LLC (5646); Northern Engineering and Plastics Corporation (Delaware) (2493); Northern Engineering and Plastics Corporation (Puerto Rico) (2493); Northern Plastics Corporation – Puerto Rico (Pennsylvania) (2883); Portola Allied Tool, Inc. (1811); and Portola Tech International, Inc. (1487). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 951 Douglas Road, Batavia, IL 60510.

[2]    Unless otherwise noted, capitalized terms not defined herein shall have the meanings ascribed to them in the *Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (With Technical Amendments)* [Docket No. 164].

d.      distributed the Disclosure Statement and appropriate Ballots for voting on the Prepackaged Plan to Holders of Class 2 (Second Lien Debt Claims), Class 3 (Senior Note Claims), and Class 6 (Equity Interests) beginning on or about August 4, 2008, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), and setting the Voting Deadline as August 29, 2008, as evidenced by the *Affidavit of Service and Preliminary Vote Certification of Financial Balloting Group LLC* [Docket No. 3], and the *Affidavit of Service of Sean Schuster* [Docket No. 18] both filed August 27, 2008 (the "Voting Affidavits");

e.      filed, on August 27, 2008, the *Motion of the Debtors for Order (A) Scheduling Objection Deadline and Combined Hearing on Disclosure Statement and Confirmation of Plan; (B) Approving Form and Notice of Combined Hearing on Disclosure Statement and Confirmation of Plan; (C) Establishing Procedures for Objecting to Disclosure Statement and Plan; (D) Approving Solicitation Procedures; and (E) Granting Related Relief* [Docket No. 15] (the "Scheduling Motion");

f.      filed, on September 3, 2008, the *Certification of Jane Sullivan with respect to the Tabulation of Votes on the Portola Prepackaged Plan* [Docket No. 62] (the "Voting Certification");

g.      served, on or before September 4, 2008, pursuant to the *Order (A) Scheduling Objection Deadline and Combined Hearing on Disclosure Statement and Confirmation of Plan; (B) Approving Form and Notice of Combined Hearing on Disclosure Statement and Confirmation of Plan; (C) Establishing Procedures for Objecting to Disclosure Statement and Plan; (D) Approving Solicitation Procedures; and (E) Granting Related Relief* [Docket No. 49] (the "Scheduling Order"), the Confirmation Hearing Notice, on all Holders of Equity Interests and Holders of the Senior Notes as evidenced by the *Affidavit of Service of Financial Balloting Group LLC of Combined Hearing Notice on Holders of Senior Notes and Equity Interests* [Docket No. 78], as well as the creditor matrix, as evidenced by the *Affidavit of Service of Angela M. Nguyen* [Docket No. 85] (the "Confirmation Hearing Notice Affidavits");

h.      published, on September 10, 2008, pursuant to the Scheduling Order, the notice of the commencement of these Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and confirmation of the Prepackaged Plan, the deadline for filing objections to the Prepackaged Plan and Disclosure Statement, and a summary of the Prepackaged Plan (the "Confirmation Hearing Notice") in *The Wall Street Journal* and *USA Today*, as evidenced by the Affidavit *of Publication of Antoinette Chase in USA Today Regarding Notice of Confirmation Hearing and Summary of Plan of Reorganization* [Docket No. 95], and the *Affidavit of Publication of Erin Ostenson in The Wall Street Journal Regarding Notice of Confirmation Hearing and Summary of Plan of Reorganization* [Docket No. 96] (collectively, the "Publication Affidavits");

2

i. filed, on September 22, 2008, the *Debtors' First Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 132] (the "First Amended Plan");

j. filed, on September 22, 2008, the various documents comprising the Plan *Supplement for Debtors' First Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 134] (the "Plan Supplement);

k. filed, on October 10, 2008, the *Revised Exhibits F, G, and H to Supplement for Debtors' First Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 168];

l. filed, on October 10, 2008, the *Debtors' Memorandum of Law in Support of Entry of an Order (I) Approving (A) the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(B) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures and (C) Forms of Ballots; and (II) Confirming the Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 167] (together with all exhibits thereto, the "Confirmation Brief");

m. filed, on October 10, 2008, Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code, (B) Solicitation of Votes and Voting Procedures, and (C) Forms of Ballots, and (II) Confirming the Debtors' Joint Prepackaged Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code [Docket No. 166] (the "Confirmation Order"); and

n. filed, on October 10, 2008, the *Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (With Technical Amendments)* [Docket No. 164] (the "Second Amended Plan," or the "Prepackaged Plan"), attached hereto as Exhibit A;

This Court having:

a. entered, on August 29, 2008, the Scheduling Order;

b. set October 14, 2008, at 3:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing (as defined below) pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c. reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Affidavits, the Ballots, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights;

3

d.     held a hearing to consider the adequacy of the Disclosure Statement and the Confirmation of the Plan on October 14, 2008 (the "Confirmation Hearing") after due and sufficient notice was given to Holders of Claims against, and Interests in, the Debtors and other parties in interest in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, in each as established by the Confirmation Hearing Notice Affidavits and the Publication Affidavits;

e.     heard the statements, arguments, and objections made by counsel in respect of Confirmation;

f.     considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

g.     overruled any and all objections (to the extent not withdrawn) to the Prepackaged Plan, the Disclosure Statement and Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

h.     taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW.

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**     **Findings and Conclusions.** The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute

4

conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** **Jurisdiction, Venue, Core Proceeding (28 U.S.C. § § 157(b)(2), 1334(a)).** The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper in this District and before this Court pursuant to 28 U.S.C. § § 1408 and 1409. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

**C.** **Chapter 11 Petitions.** On the Petition Date, each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. The Court has ordered the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

**D.** **Judicial Notice.** The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record

5

at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are overruled on the merits.

E. **Burden of Proof.** The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

F. **Adequacy of Disclosure Statement.** The Disclosure Statement (1) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules, and regulations, including the Securities Act of 1933, as amended (the "Securities Act"), (2) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (3) is approved in all respects.

G. **Voting.** As evidenced by the Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable non-bankruptcy law, rule, and regulation.

H. **Solicitation.** Prior to the Petition Date, the Prepackaged Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, the Confirmation Hearing Notice, were transmitted and served in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for holders of Claims in the Classes listed in the chart below, which lists the Classes of Claims entitled under the Prepackaged Plan to vote to accept or reject the Prepackaged Plan.

6

| Class | Designation |
|---|---|
| Class 2 | Second Lien Debt Claims |
| Class 3 | Senior Notes Claims |
| Class 6 | Equity Interests |

The period during which the Debtors solicited acceptances to the Prepackaged Plan (which was transmitted to all creditors and equity holders of the same class) was a reasonable period of time for Holders of Claims or Interests to make an informed decision to accept or reject the Prepackaged Plan. In particular, and without limitation, (i) the Prepackaged Plan, the Disclosure Statement, and the Ballots were transmitted to all parties-in-interest entitled to vote thereon by sending such documents to their respective brokers, dealers, banks, or other nominees, who properly and timely solicited votes from such parties, (ii) sufficient and reasonable time and notice were prescribed for the Holders of Impaired Claims in Class 2, Class 3, and Class 6 to accept or reject the Plan, (iii) the Ballots submitted by the Holders of Impaired Claims in Class 2, Class 3, and Class 6 (whether before or after the commencement of these Chapter 11 Cases) were submitted by the holders of record of the Impaired Claims in Class 2, Class 3, and Class 6 on the date specified in such documents for the purpose of the solicitation, that is, the Voting Record Date, and (iv) the establishment and notice of the voting record date was appropriate and reasonable. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the holders of Claims or Equity Interests in the Classes listed in the chart below as each such Class is unimpaired under the Prepackaged Plan and conclusively presumed to have accepted the Prepackaged Plan.

| Class | Designation |
|---|---|
| Class 1 | Senior Secured Debt Claims |
| Class 4 | Other Unsecured Claims |
| Class 5 | Intercompany Claims |
| Class 8 | Intercompany Interests |

The Debtors also were not required to solicit votes from the holders of Claims in the Class listed in the chart below, as such Class receives no recovery from the Debtors under the Prepackaged Plan, is impaired, and, therefore, is deemed to reject the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 7 | Section 510(b) Claims |

As described in and as evidenced by the Voting Certification and the Voting Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the Confirmation Hearing Notice, and publication of such Confirmation Hearing Notice (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances. The Solicitation of votes on the Prepackaged Plan complied with the solicitation procedures set forth in the Scheduling Motion and approved in the Scheduling Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations. The Debtors, the Reorganized Debtors, GECC, Holders of Senior Notes, the Exit Facility Agent, the Exit Facility Lenders, Holders of Equity Interests, the Indenture Trustee, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys, and advisors of or to the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.     **Notice.** As is evidenced by the Voting Certification and the Voting Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Prepackaged Plan) have been given due, proper, timely, and adequate notice in accordance

8

with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable non-bankruptcy law, rule, and regulation, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J. **Plan Supplement.** On September 22, 2008, the Debtors filed the Plan Supplement, which includes the following documents: (1) the Amended and Restated Certificate of Incorporation of Portola Packaging, Inc. (the "Restated Certificate of Incorporation"); (2) the Amended and Restated By-Laws of Portola Packaging, Inc. (the "Restated Bylaws"); (3) the Stockholders' Agreement; (4) the Registration Rights Agreement; (5) the Warrant Agreement; (6) a schedule of executory contracts and unexpired leases to be rejected; (7) a Nonexclusive List of Retained Causes of Action (8) the identities of the initial members of the Board of Directors of the Reorganized Debtors and the compensation of any Insider serving as a Director; and (9) the Second Lien Term Loan Exit Facility Commitment Letter. The Plan Supplement was subsequently amended on October 10, 2008 (Docket No. 168). All such materials comply with the terms of the Prepackaged Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules and no other or further notice is or shall be required.

K. **Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtors as proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L. **Proper Classification (11 U.S.C. § § 1122, 1123(a)(1)).** In addition to Administrative Expense Claims (Article II.B. of the Prepackaged Plan), Priority Tax Claims

9

(Article II.C. of the Prepackaged Plan), and DIP Facility Claims (Article II.A. of the Prepackaged Plan), which need not be classified, Article III of the Prepackaged Plan classifies eight Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M. **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article III of the Prepackaged Plan specifies that Claims or Equity Interests listed in the chart below are unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 1 | Senior Secured Debt Claims |
| Class 4 | Other Unsecured Claims |
| Class 5 | Intercompany Claims |
| Class 8 | Intercompany Interests |

N. **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article III of the Prepackaged Plan designates the Classes of Claims and Equity Interests listed in the chart below as impaired and specify the treatment of the Claims and Equity Interests in those Classes within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 2 | Second Lien Debt Claims |
| Class 3 | Senior Notes Claims |
| Class 6 | Equity Interests |
| Class 7 | Section 510(b) Claims |

K&E 13418075.14

**O.** **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Prepackaged Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest. Specifically, each Holder of a Class 3 Senior Note Claim receives the same treatment as each other Holder in Class 3 because they receive 100% of the New Common Stock on a *pro rata* basis. Accordingly, the Prepackaged Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

**P.** **Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)).** The Prepackaged Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Prepackaged Plan thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including: (a) the substantive consolidation of the Debtors for purposes of the Prepackaged Plan only; (b) the continued corporate existence of the Debtors, other than those Debtors that are merging into Portola Packaging, Inc. pursuant to Article IV.G of the Prepackaged Plan; (c) generally allowing for all corporate action necessary to effectuate the Prepackaged Plan, including the assumption of executory contracts, appointment of the directors and officers of the Reorganized Debtors, execution and entry into the Exit Facility, the issuance and distribution of the New Common Stock and New Warrants required to be issued pursuant to the Prepackaged Plan; (d) the adoption and filing of the Restated Certificate of Incorporation and the Restated Bylaws; (e) cancellation of the Old Common Stock and the Indenture (except as provided in the Prepackaged Plan); (f) cancellation of Liens securing any Secured Claim; (g) identification of sources of consideration from which the Debtors will make distributions under the Prepackaged Plan; and (h) preservation of certain of the Debtors' Causes of Action.

11

Q. **Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).** The restated certificates of incorporation of each of the Reorganized Debtors prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

R. **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).** The Plan Supplement and Article IV.K. of the Prepackaged Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

S. **Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article III of the Prepackaged Plan the Classes of Claims and Equity Interests listed in the chart below are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 2 | Second Lien Debt Claims |
| Class 3 | Senior Notes Claims |
| Class 6 | Equity Interests |
| Class 7 | Section 510(b) Claims |

Pursuant to Article III of the Prepackaged Plan the Classes of Claims and Equity Interests listed in the chart below are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

| Class | Designation |
|---|---|
| Class 1 | Senior Secured Debt Claims |
| Class 4 | Other Unsecured Claims |
| Class 5 | Intercompany Claims |
| Class 8 | Intercompany Interests |

K&E 13418075.14

**T.     Assumption and Rejection (11 U.S.C. § 1123(b)(2)).**     Article V of the Prepackaged Plan and Exhibit F of the Plan Supplement, governing the assumption and rejection of executory contracts and unexpired leases, meets the requirements of section 365(b) of the Bankruptcy Code.     There have been no objections to the Debtors' assumption of executory contracts pursuant to Article V of the Prepackaged Plan

**U.     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**     The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**V.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**     The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.     Specifically:

1.     each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code and are proper proponents of the Prepackaged Plan under section 1121(a) of the Bankruptcy Code;

2.     the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

3.     the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable non-bankruptcy law, rule, and regulation, the Scheduling Order, and all other applicable law, in transmitting the Prepackaged Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan.

13

**W.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**   The Debtors have proposed the Prepackaged Plan (including the Exit Facility contemplated thereunder and all documents necessary to effectuate the Prepackaged Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.  The Prepackaged Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.     The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan) was negotiated at arm's-length among representatives of the Debtors, the Holders of the Senior Notes, the Holders of Senior Secured Debt Claims, and Second Lien Debt Claims, and their respective professionals.   Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms'-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

**X.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**   Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with the Debtors' Reorganization Cases, or in connection with the Prepackaged Plan and incident to the Debtors' Reorganization Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. As part of the negotiated terms on which the Wayzata Entities, the Informal Noteholders' Committee, and GECC each agreed in the Restructuring Support

14

Agreement to proceed with the consensual, prepackaged restructuring reflected in the Prepackaged Plan, the Debtors have agreed to pay, subject to Paragraph 5 of the Final DIP Financing Order (as defined below), the reasonable fees and expenses incurred by the respective DIP Agents and the DIP Lenders, including all reasonable fees and expenses incurred by the professional advisors to such parties, in the ordinary course of business pursuant to the terms of their respective prepetition engagement letters without any requirement to file any retention or fee application. The Debtors have agreed to pay, subject to Paragraph 10 of the Final DIP Financing Order, the reasonable fees and expenses incurred by GECC and the Wayzata Entities, including all reasonable fees and expenses incurred by the professional advisors to such parties, in the ordinary course of business pursuant to the terms of their respective prepetition engagement letters without any requirement to file any retention or fee application. The Debtors have also agreed to pay, subject to Article II.B of Prepackaged Plan, (i) the reasonable fees and expenses incurred by the professional advisors to the Informal Noteholders' Committee and its members pursuant to the terms of their respective prepetition engagement letters, and (ii) claims for out-of-pocket expenses incurred by the members of the Informal Noteholders' Committee in connection with the Chapter 11 Cases up to an aggregate amount of $25,000. To the extent the Debtors, GECC, the Wayzata Entities, and the Informal Noteholders' Committee, respectively, cannot agree as to the amount of such fees and expenses, the Court shall determine the reasonable amount of such fees and expenses. Notwithstanding any provision to the contrary herein or in the Final DIP Financing Order (including, without limitation, Paragraph 5 of the Final DIP Financing Order), GECC, the Wayzata Entities, the Informal Noteholders' Committee, the DIP Agents and the DIP Lenders shall each be entitled to receive on the Effective Date payment for all costs and expenses required to be reimbursed pursuant to the Prepackaged Plan

15

and/or the Final DIP Financing Order, as applicable; provided, however, the rights of the United States Trustee and the Debtors to object to the reasonableness of any such fees, costs and expenses under Paragraph 5 of the Final DIP Financing Order are hereby preserved to the fullest extent set forth in such Paragraph and any fees or expenses finally determined by the Bankruptcy Court (or appellate court if applicable) to be unreasonable shall be promptly returned by the recipient to the Debtors' estates as provided in the applicable order setting forth such final determination.

**Y.      Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Prepackaged Plan have been fully disclosed to the extent available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims and Equity Interests and with public policy.  As set forth in Exhibit H to the Plan Supplement, on the Effective Date, the new board of directors of Reorganized Portola shall be comprised of seven members, six of whom are identified in the Plan Supplement (the final director has not yet been named).  Each such member and each member of the new boards of directors of the other Reorganized Debtors will serve in accordance with the terms and subject to the conditions of the Restated Certificate of Incorporation, the Restated Bylaws, Stockholders' Agreement, and other relevant organizational documents, each as applicable.  The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation also have been fully disclosed in the Plan Supplement.

16

**Z.**     **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

**AA.**     **Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).**  The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided in the Disclosure Statement and other evidence submitted, proffered or adduced before or at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence, and (3) establish that each Holder of an Impaired Claim or Equity Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

**BB.**     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  The Classes of Claims and Equity Interests listed in the chart below are Classes of unimpaired Claims or Equity Interests that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 1 | Senior Secured Debt Claims |
| Class 4 | Other Unsecured Claims |
| Class 5 | Intercompany Claims |
| Class 8 | Intercompany Interests |

The Classes of Claims listed in the chart below have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Classes do not include Insiders of the Debtors (as that term is defined in section 101(31) of the Bankruptcy Code).

17

| Class | Designation |
|-------|-------------|
| Class 2 | Second Lien Debt Claims |
| Class 3 | Senior Notes Claims |

The Class of Claims listed in the chart below is impaired by the Prepackaged Plan and is not entitled to receive or retain any property under the Prepackaged Plan and, therefore, is deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 7 | Section 510(b) Claims |

While the Prepackaged Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code, the Prepackaged Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**CC.** **Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Expense Claims pursuant to Article II.B. of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Article II.C. of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**DD.** **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** The Classes of Claims listed in the chart below voted to accept the Prepackaged Plan by the requisite majorities, determined without including any acceptance of the Prepackaged Plan by any Insider (as that term is defined in section 101(31) of the Bankruptcy Code), thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

| Class | Designation |
|-------|-------------|
| Class 2 | Second Lien Debt Claims |
| Class 3 | Senior Notes Claims |

18

**EE. Feasibility (11 U.S.C. § 1129(a)(11)).** The information in the Disclosure Statement, the Declaration of Mark Rechan in Support of Confirmation, the Declaration of Joseph C. Stein in Support of Confirmation and the evidence proffered or adduced at the Confirmation Hearing (1) is persuasive and credible, (2) has not been controverted by other evidence, and (3) establishes that the Prepackaged Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Prepackaged Plan and their business in the ordinary course and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**FF. Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Article XIII.C. of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

**GG. Continuation of Employee and Retiree Benefits (11 U.S.C. § 1129(a)(13)).** Article IV.O. of the Prepackaged Plan provides that all employee compensation and Benefit Plans of the Debtors, including Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be honored. Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

**HH. No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).** The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support

19

obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

      **II.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).** The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

      **JJ.    No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).** The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

      **KK.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The Classes of Claims and Equity Interests listed in the chart below have voted to reject, or are deemed to have rejected, the Prepackaged Plan.

| Class | Designation |
|-------|-------------|
| Class 6 | Equity Interests |
| Class 7 | Section 510(b) Claims |

Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Prepackaged Plan does not discriminate unfairly with respect to and is fair and equitable with respect the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any interest that is junior to each such Class will receive or retain any property under the Prepackaged Plan on account of such junior interest, and no holder of a Claim in a Class senior to such Classes is receiving more than 100% on account of its Claim. Thus, the Prepackaged Plan may be confirmed notwithstanding the deemed rejection of the Prepackaged Plan by these Classes.

K&E 13418075.14

**LL.** **Only One Plan (11 U.S.C. § 1129(c)).** The Prepackaged Plan is the only plan filed in each of these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**MM.** **Principal Purpose of the Prepackaged Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Prepackaged Plan. Accordingly, the Prepackaged Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**NN.** **Modifications to the Prepackaged Plan.** The modifications to the Prepackaged Plan made in the First Amended Plan and Second Amended Plan constitute technical changes or do not materially adversely affect or change the treatment of any Claims or Equity Interests of any Holder and are in compliance with section 1127 of the Bankruptcy Code. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Prepackaged Plan.

**OO.** **Good Faith Solicitation (11 U.S.C. § 1125(e)).** Based on the record before the Court in the Chapter 11 Cases and evidence presented at the Confirmation Hearing, the Debtors and the Reorganized Debtors, GECC, the Wayzata Entities, the Informal Noteholders' Committee, the Indenture Trustee, the Exit Facility Agent, the Exit Facility Lenders, and their respective successors, predecessors, control persons, members, officers, directors, employees, and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons have acted in "good faith" within the meaning

21

of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all or any of their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation, if any, in the activities described in section 1125 of the Bankruptcy Code, including in the offer and issuance of any securities under the Prepackaged Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation, if any, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VIII.E. of the Prepackaged Plan.

**PP.** **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**QQ.** **Implementation.** All documents necessary to implement the Prepackaged Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution (including the documentation of the Exit Facility), be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

**RR.** **Injunction, Exculpation, and Releases.** The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, releases, and injunction set forth in Article VIII.D., E., F., and G. of the Prepackaged Plan,

22

respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the exculpation and unopposed releases set forth in Article VIII.D., E., and F. of the Prepackaged Plan, respectively, when, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (1) were integral to the agreement among various parties in interest, as reflected in the Restructuring Agreement, and are essential to the formulation and implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code, (2) confer substantial benefits on the Debtors' estates, (3) are fair and reasonable, (4) are in the best interests of the Debtors, their estates, and other parties in interest, and (5) no party has filed an objection to the Second Amended Plan's release and exculpation provisions. Further, the exculpation provision in Article VIII.E. of the Prepackaged Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order to have constituted fraud, willful misconduct, or criminal misconduct. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Prepackaged Plan and implemented by this Confirmation Order are supported by adequate consideration and are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, and their estates, creditors, and equity holders. The releases of non-Debtors in Articles IV.I and VIII of the Prepackaged Plan are fair to Holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the Released Parties. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpation, and injunction provided for in Article

VIII.D., E., F., and G. of the Prepackaged Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the exculpation, releases, and injunction set forth in Article VIII of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Prepackaged Plan.

    **SS.**   **Settlement.**  Except as otherwise provided in the Prepackaged Plan and this Confirmation Order, the Prepackaged Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Confirmation Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Prepackaged Plan, including but not limited to the provisions of Articles IV.R. and VII.B. of the Prepackaged Plan).

    **TT.**   **Good Faith.**  The Debtors, Reorganized Debtors, the respective DIP Lenders, the respective DIP Agents, GECC, the Wayzata Entities, the members of the Informal Noteholders' Committee, the Indenture Trustee, the Exit Facility Lenders, and the Exit Facility Agent will be acting in good faith if they proceed to (1) consummate the Prepackaged Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (2) take the actions authorized and directed by this Confirmation Order.

    **UU.**   **Exit Facility.**  Upon diligent inquiry, the Debtors have determined that the Exit Facility to be provided by the Exit Facility Agent and Exit Facility Lenders subject to and in accordance with the Commitment Letters (as defined below) is the best alternative available to

24

the Debtors. Wells Fargo Foothill, LLC ("WFF") and Regiment Capital Special Situations Fund IV, L.P. ("Regiment") shall constitute the Exit Facility Agent in their respective capacities under the Exit Facility and, together with all other lenders under the Exit Facility from time to time, shall constitute the Exit Facility Lenders. The Commitment Letters and Exit Facility have been negotiated in good faith and on an arms'-length basis, without intent to hinder, delay, or defraud any creditor of the Debtors, and each party thereto may rely upon the provisions of this Confirmation Order in closing the Commitment Letters and the Exit Facility. The availability under the Exit Facility is necessary to the consummation of the Prepackaged Plan and the operation of the Reorganized Debtors. The terms and conditions of the Exit Facility documents described in the Commitment Letters (as defined below) and the related exit financing fee letters, if any, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are in the best interests of the Debtors' estates and their creditors. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with any documents in connection with the Exit Facility, in accordance with the commitment letters received from the Exit Facility Lenders and the Exit Facility Agent and Wayzata (the "Commitment Letters"), and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Prepackaged Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the Commitment Letters and the Exit Facility documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.

25

The Exit Facility documents, including the Commitment Letters, any associated fee letters and any definitive loan and security documentation, including, without limitation, any subordination or intercreditor agreements relating thereto (collectively, the "Exit Facility Documents"), shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors enforceable in accordance with their terms, and will not conflict with any federal or state law. The Debtors have provided sufficient and adequate notice of the Commitment Letters and the credit arrangements set forth therein to all parties-in-interest, including, without limitation, the DIP Agent and DIP Lenders, the agent and lenders under the First Lien Agreement, the Informal Noteholders' Committee, and the United States Trustee. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility Documents shall be deemed approved and shall be legal, valid, binding, and enforceable first priority liens on the collateral for the Exit Facility. The security interests and liens granted in accordance with the Exiting Financing Documents (the "Exit Liens") shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs, and expenses paid or to be paid by the Reorganized Debtors in connection with the Exit Facility are hereby ratified and approved. In accordance with the terms of the Second Amended Plan, proceeds from the Exit Facility shall be used to indefeasibly pay in full in Cash on the Effective

26

Date the DIP Facility Claims, the Senior Secured Debt Claims and the Second Lien Debt Claims and such payments shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

**VV.     Valuation.**     Pursuant to the valuation analysis attached as Exhibit C of the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to Holders of Equity Interests or Section 510(b) Claims under absolute priority principles.  The valuation set forth in Exhibit C was prepared by Peter J. Solomon Company in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' business as a going concern.

**WW.     Retention of Jurisdiction.**     The Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Prepackaged Plan and section 1142 of the Bankruptcy Code.  Notwithstanding the foregoing, subsequent to the Effective Date, this Court shall not retain jurisdiction over (i) the exercise of any rights or remedies by the Exit Facility Agent or Exit Facility Lenders under the Exit Facility Documents or (ii) the determination of any controversies or disputes relating thereto.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.     **Findings of Fact and Conclusions of Law.**     The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

27

2.      **Notice of the Confirmation Hearing.**    Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

3.      **Solicitation.**    The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

4.      **Ballots.**    The Ballots are in compliance with Bankruptcy Rule 3018(c), conform to Official Form B14, and are approved in all respects.

5.      **The Disclosure Statement.**    The Disclosure Statement: (a) complies in all respects with any disclosure requirements of applicable non-bankruptcy law, including the Securities Act, to the extent applicable, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (c) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under sections 3(a)(9) and/or 4(2) of the Securities Act and Regulation D promulgated thereunder. Section 3(a)(9) of the Securities Act exempts from registration under the Securities Act "any security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange." To the extent that the Debtors' solicitation of

28

acceptances of the Prepackaged Plan from holders of Class 3 Senior Note Claims and/or Class 6 Equity Interests is deemed to constitute an offer or sale of new securities, the Debtors have complied with the requirements of section 3(a)(9) of the Securities Act in that such solicitation would constitute an exchange of securities involving existing security Holders. Section 4(2) of the Securities Act exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." The Debtors have complied with the requirements of section 4(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities.

6.    **Confirmation of the Prepackaged Plan.** The Prepackaged Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Prepackaged Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

7.    **Objections.** All Objections, responses to, and statements and comments, if any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

8.    **No Action Required.** Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation

29

of the Prepackaged Plan, including any documentation executed in connection with the Exit Facility.

9. **Binding Effect.** On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Prepackaged Plan shall bind the Debtors, the Reorganized Debtors and the Non-Debtor Subsidiaries, all Holders of Claims and Equity Interests of the Debtors (irrespective of whether such Claims or Equity Interests are impaired under the Prepackaged Plan or whether the Holders of such Claims or Equity Interests accepted or are deemed to have accepted the Prepackaged Plan), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Debtors' Reorganization Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

10. **Free and Clear.** Pursuant to section 1141(b) of the Bankruptcy Code, and except as otherwise provided in the Prepackaged Plan or in this Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, Liens, encumbrances, charges, and other interests of Holders of Claims or Equity Interests. From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire, or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Court, or the United States Trustee (except for quarterly operating reports and fees associated therewith). In addition, on the Effective Date, the Reorganized Debtors may (a) cause the transfer of assets or equity interests between or among the Reorganized Debtors and/or (b) engage in any other transaction in furtherance of the Prepackaged Plan.

30

11.    **Implementation of the Prepackaged Plan.**  The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Prepackaged Plan.  On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of their boards of directors are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the Prepackaged Plan, in the name of and on behalf of the Reorganized Debtors.  On the Effective Date, the existing boards of directors of each of the Debtors shall be deemed to have resigned and each respective Debtor will be deemed to have accepted such resignation without the need for further action by any Debtor or board member. The board of directors of Reorganized Portola and of the other Reorganized Debtors shall, as of the Effective Date, consist of those directors identified in the Plan Supplement, without the need for any further action.

12.    **The Mergers.**  Pursuant to section 1123(a)(5)(C) of the Bankruptcy Code, the Reorganized Debtors are hereby authorized to consummate the mergers of certain of their Debtor subsidiaries into Portola as set forth in Article IV.G. of the Prepackaged Plan, file a certificate of merger with the Delaware Secretary of State or other appropriate state authorities, and execute any additional documents and take any additional action necessary to consummate the mergers or otherwise contemplated by the mergers.

31

13. **Issuance of New Common Stock and New Warrants.** The Reorganized Debtors are authorized to issue the New Common Stock and the New Warrants pursuant to the terms and conditions of the Prepackaged Plan.

14. **Compliance with Section 1123(a)(6) of the Bankruptcy Code.** The Restated Certificate of Incorporation of each of the Reorganized Debtors comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by the Reorganized Debtors of the Restated Certificates of Incorporation is hereby authorized, ratified, and approved.

15. **Exemption from Securities Law.** The issuance of the New Common Stock and the New Warrants and any other securities pursuant to the Prepackaged Plan and any subsequent sales, resales or transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code. In addition, under section 1145 of the Bankruptcy Code, any Security contemplated by the Prepackaged Plan and any and all settlement agreements incorporated therein, will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (ii) the restrictions, if any, on the transferability of such Security and instruments.

16. **Cancellation of Existing Securities and Agreements.** On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors or the Non-Debtor Subsidiaries under the First Lien Agreement, the Second Lien Credit Agreement,

32

the Indenture, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and the Non-Debtor Subsidiaries, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and the Non-Debtor Subsidiaries pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing Holders to receive distributions under the Prepackaged Plan and as provided in the Prepackaged Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Prepackaged Plan, or result in any expense or liability to the Reorganized Debtors, except as provided in the Prepackaged Plan.

17. **Surrender of Existing Securities and Indenture Trustee.** With respect to Senior Note Claims, distributions of New Common Stock to holders of Senior Note Claims shall

33

be made to the Indenture Trustee for the benefit of such holders. The Indenture Trustee shall, in turn, administer the distributions of New Common Stock to the holders of Senior Note Claims in accordance with the terms of the Indenture. The reasonable fees and expenses of the Indenture Trustee incurred in connection with the distributions described herein, or for performing other services required by the Plan in connection with the bankruptcy cases, including the reasonable fees and expenses of the Indenture Trustee's professionals and agents, shall be paid by the Reorganized Debtors without further application to or order of the Bankruptcy Court. The Effective Date is deemed the record date (the "Record Date") for identification of holders of Senior Note Claims entitled to receive distributions under the Plan. The Debtors, their agents and servicers, and the Indenture Trustee, shall have no obligation to recognize any transfer of the Senior Notes occurring after the Record Date. In making any distribution with respect to any Senior Note Claim, the Debtors, their agents and servicers, and the Indenture Trustee, shall be entitled to recognize and deal for all purposes hereunder only with the entity who is listed on the Indenture Trustee's books and records as of the close of business on the Record Date. As a condition precedent to receiving a distribution of New Common Stock from the Indenture Trustee under the Plan on account of the Senior Note Claims, the holder of such Senior Note Claim shall (i) comply with reasonable tender procedures established by the Reorganized Debtors together with Computershare Trust Company, N.A., the Reorganized Debtors' stock transfer agent (the "Stock Transfer Agent"), and (ii) register with the Stock Transfer Agent within 180 days of the Effective Date. Any shares of New Common Stock which are not registered within such time period by a holder of Senior Note Claims (each, a "Non-Registering Holder") shall be registered in the name of Reorganized Portola, subject to the right of each Non-Registering Holder to register such shares of New Common Stock in its own name if such

34

Holder can produce evidence, reasonably satisfactory to Reorganized Portola, that it was the beneficial owner of such Senior Note Claims as of the Record Date. No New Common Stock shall be distributed or registered in the name of a holder of a Senior Note Claim or in the name of Reorganized Portola prior to payment in full of all of the Indenture Trustee's reasonable fees and expenses, previously invoiced and outstanding, including those of its professionals and agents. Any Non-Registering Holder of a Senior Note Claim that fails to register such shares with the Stock Transfer Agent before the second anniversary of the Effective Date shall be deemed to have forfeited all rights and claims on account of such holder's Senior Note Claims and may not participate in any distributions on account of such holder's Senior Note Claims under the Plan. The provisions of Article VI.E.3 of the Prepackaged Plan shall not apply to the holders of the Senior Note Claims. The Indenture Trustee is deemed to have acted prudently and reasonably and in a manner consistent with its fiduciary duties to the Senior Noteholders under the Indenture in its actions and conduct in connection with these Chapter 11 Cases, the Prepackaged Plan and the distributions thereunder.

18. **Subordination.** Except as otherwise expressly provided in any of the Prepackaged Plan, this Confirmation Order, any other order of this Court, or the DIP Loan Documents (as defined in the Final DIP Financing Order (as defined below)), (i) the classification and manner of satisfying all Claims and Equity Interests under the Prepackaged Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (ii) all subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Prepackaged Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently;

35

and (iii) the distributions under the Prepackaged Plan to the Holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

19.     **Cancellation of Liens.** Except as otherwise provided in the Prepackaged Plan, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released, and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Reorganized Debtors. Subject to Paragraph 24 of this Confirmation Order, to the extent any such release is not promptly delivered, filed, or otherwise effected by such Holders, the Reorganized Debtors and the Exit Facility Agent shall be deemed authorized to execute, file, record, deliver, or otherwise cause such releases without further notice or order of this Court. All right, title, and interest of any Holder of a Lien shall revert to the Reorganized Debtors.

20.     **Compromise of Controversies.** In consideration for the distributions and other benefits, including releases, provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Prepackaged Plan, and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to Article IV.R. of the Prepackaged Plan.

21.     **Assumption or Rejection of Contracts and Leases.** Except as otherwise provided in Article V.A. of the Prepackaged Plan, in this Confirmation Order, or in any contract,

36

instrument, release, indenture, or other agreement or document entered into in connection with the Prepackaged Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, if any, filed by the Debtors as part of the Plan Supplement. Such contract and lease assumptions or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, if any, are overruled. The deadline pursuant to Bankruptcy Code section 365(d)(4) for the Debtors to assume or reject the lease dated June 5, 1972, as amended, between Country Club Acres, Inc. and Berkshire Frosted Foods, Inc., is hereby extended to and including October 31, 2008. The deadline for all parties entitled to make elections under Bankruptcy Code section 365, including section 365(n), shall be 30 days after the Confirmation Date.

22. **Conditions to Effective Date.** The Prepackaged Plan shall not become effective unless and until the conditions set forth in Article X.B. of the Prepackaged Plan have been satisfied or waived pursuant to Article X.C. of the Prepackaged Plan. In the event that one or more of the conditions specified in Article X.B. of the Prepackaged Plan have not occurred on or before the time period set forth in Article X.B.4. of the Prepackaged Plan or otherwise been waived pursuant to Article X.C. of the Prepackaged Plan, pursuant to Article X.E. of the Prepackaged Plan, the Prepackaged Plan shall be null and void in all respects, and nothing contained in the Prepackaged Plan or the Disclosure Statement shall: (1) constitute a waiver or

37

release of any claims by or Claims against or Equity Interests in the Debtors and/or the Non-Debtor Subsidiaries or of any liens on the Debtors' assets or properties; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

23. **Survival of Provisions of Final DIP Financing Order Until Effective Date.** Notwithstanding anything to the contrary contained in this Confirmation Order or in the Prepackaged Plan, the obligations under and as defined in the DIP Credit Agreement (the "DIP Obligations") and the rights, liens, priorities, and other protections provided to the respective DIP Agents, DIP Lenders, GECC, and the Wayzata Entities under and as defined in the DIP Credit Agreement and the *Final Order Under 11 U.S.C. § § 105, 361, 362, 363(c), 364 (c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e)(1) and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors (a) to Obtain Postpetition Financing and (b) Authorizing Debtors To Use Cash Collateral and (II) Granting Adequate Protection To Prepetition Secured Parties*, entered September 22, 2008 [Docket No. 137] (the "Final DIP Financing Order"), shall survive the occurrence of the Confirmation Date and continue in full force and effect until the Effective Date.

24. **Authorization to Pay First Lien Obligations, Second Lien Obligations and DIP Obligations in Full.** The Debtors shall be, and hereby are, authorized and directed, on the Effective Date, to pay in full (i) all Senior Secured Debt Claims, if any, and all obligations owing to GECC pursuant to the Final DIP Financing Order, (ii) all Second Lien Debt Claims, if any, and all obligations owing to the Wayzata Entities pursuant to the Final DIP Financing Order, and (iii) all DIP Obligations (as defined in the Final DIP Financing Order) in accordance with the

K&E 13418075.14

terms of the respective DIP Credit Agreements and the Final DIP Financing Order (the respective amounts to be paid in full pursuant to the respective payoff amounts set forth in the relevant payoff letters to be delivered by such lenders as of the Effective Date, collectively, the "Refinance Amounts"). Upon the Effective Date and the satisfaction of all DIP Obligations in accordance with the terms of the respective DIP Credit Agreements and the Final DIP Financing Order, the DIP Lenders' commitments to provide financing under the Final DIP Financing Order, if any, shall be terminated without any further action by any party. The Exit Facility Agent is hereby authorized, and the Debtors are hereby authorized and directed to request that the Exit Facility Agent, to remit proceeds of the Exit Facility equal to the respective Refinance Amounts directly to GECC, the Wayzata Entities and the respective DIP Agents, as applicable, in accordance with the terms of the Prepackaged Plan and this Paragraph 24, and such loan proceeds shall be deemed delivered directly to the Debtors for all purposes under this Confirmation Order and the Exit Facility Documents. Notwithstanding anything herein or in the Prepackaged Plan to the contrary, the "Effective Date" shall not be deemed to have occurred unless and until proceeds of the Exit Financing in the respective Refinance Amounts, as applicable, are remitted to GECC, the Wayzata Entities and the respective DIP Agents in compliance with this Paragraph 24.

25. **Exit Facility.** The Commitment Letters, the Exit Facility, the terms of the foregoing, and the respective agreements and undertakings of the Debtors and Reorganized Debtors therein are approved. Each of the Debtors and Reorganized Debtors, as the case may be, is authorized to undertake any and all acts and actions required to implement the Commitment Letters and the Exit Facility, including without limitation, entering, executing, delivering, filing or recording the Exit Facility Documents, including, without limitation, all related loan

39

documents, as well as any other agreements, instruments, or documents necessary to implement the Exit Facility, and no board or shareholder vote shall be required with respect thereto. The parties to the Exit Facility are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or required to assist in the implementation of all transactions contemplated by the Exit Facility, including, but not limited to, the execution, delivery, filing and recording of the Exit Facility Documents and such other documents and instruments as are necessary or appropriate to effectuate, implement or consummate fully the Exit Facility Documents, the Plan or this Order. The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Court) the execution, delivery, filing and recordation of the Exit Facility Documents and all transactions contemplated by such documents with respect to the Exit Facility. The Exit Liens shall be legal, valid, and enforceable liens, as provided in the Exit Facility Documents, and the documents to be executed and delivered pursuant thereto shall constitute the legal, valid and binding obligations of Reorganized Debtors. The obligations under the Exit Facility and all related mortgages and security agreements shall, upon execution, constitute legal, valid, binding and authorized obligations of each of the parties thereto, enforceable in accordance with their terms and not in contravention of any state or federal law. As of the Effective Date, the Exit Liens shall constitute legal, valid and duly perfected first priority Liens against the Collateral (as defined in the respective Exit Facility Documents), and shall be deemed to be created, valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such security interests, liens and mortgages and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any

property descriptions attached to any filing and no further act shall be required for perfection of the liens and security interests. Neither the obligations created under the Exit Facility nor the Exit Liens granted thereunder shall constitute a preferential transfer or fraudulent conveyance under applicable federal or state laws and will not subject the Exit Facility Agent or the Exit Facility Lenders to any liability by reason of incurrence of such obligation or grant of such Exit Liens under applicable federal or state laws, including, but not limited to, successor or transferee liability. In the event an order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, the Exit Liens shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.

26. **Professional Compensation.** Except as otherwise provided in the Prepackaged Plan, this Confirmation Order, and/or the Final DIP Financing Order, all Entities seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall: (a) file, on or before the date that is forty-five days after the Effective Date their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "Final Fee Application"); and (b) be paid in full, in Cash, in such amounts as are Allowed by the Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The Reorganized Debtors are authorized to pay compensation for professional services rendered

41

and reimbursement of expenses incurred after the Confirmation Date in the ordinary course of business and without the need for Bankruptcy Court approval. Notwithstanding anything to the contrary set forth herein and as provided in the Final DIP Financing Order, the respective professionals retained by GECC, the respective DIP Agents and the Wayzata Entities shall not be required to file Final Fee Applications or any other fee applications with respect to reimbursement of their respective fees and costs.

27. **Objections to Final Fee Applications.** Any objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and the Notice Parties, so as to be received not later than 4:00 p.m. prevailing Eastern Time on the date that is five Business Days prior to the Final Fee Hearing.

28. **Administrative Expenses.** Subject to the terms and conditions of any interim or final order of the Bankruptcy Court authorizing the use of cash collateral and the Final DIP Financing Order, administrative expenses incurred by the Debtors or the Reorganized Debtors after the Effective Date, including Claims for professionals' fees and expenses, shall not be subject to application and may be paid by the Debtors or the Reorganized Debtors, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval. The Debtors shall pay the costs and expenses incurred by the Disbursing Agent, if any, (including the reasonable fees and expenses of the Disbursement Agent's attorneys, if any) in connection with consummation of the Prepackaged Plan.

29. **Discharge.** As of the Effective Date, except as otherwise provided in the Prepackaged Plan, the confirmation of the Prepackaged Plan shall (a) pursuant to Article VIII.A. of the Prepackaged Plan and except as otherwise provided in the Prepackaged Plan, discharge and release all Claims and Liens against or Equity Interests in the Debtors of any nature

42

whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, or against their estates or properties or interests in property, and except as provided otherwise in the Prepackaged Plan, all persons or entities shall be precluded from asserting against the Debtors or the Reorganized Debtors or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and (b) pursuant to Article IV.I. of the Prepackaged Plan, cancel the Indenture and any related guarantees, and the Equity Interests, provided that the Indenture and the Equity Interests shall continue in effect solely for the purpose of (i) allowing the Holders of Senior Note Claims and Equity Interests to receive their distributions under the Prepackaged Plan, and (ii) preserving the liens of the Indenture Trustee against such distributions to the extent that Claims of the Indenture Trustee are not otherwise paid pursuant to the provisions of the Prepackaged Plan, and (iii) as otherwise provided by the Prepackaged Plan. Notwithstanding such discharge and release of all Claims against or Equity Interests in the Debtors, any Claims of the Exit Facility Agent and Exit Facility Lenders under the Commitment Letters (until subsumed within the Exit Facility Documents when executed and delivered by the parties thereto), in accordance with the terms of the Commitment Letters, or the Exit Facility Documents shall not be discharged or otherwise impaired.

30. **Releases, Injunction, Exculpation, and Related Provisions Under the Plan.** The releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Prepackaged Plan are hereby approved and authorized in their entirety.

31. **Release and Exculpation Provisions.** All release and exculpation provisions embodied in the Prepackaged Plan, including those contained in Article VIII of the Prepackaged

43

Plan are (a) integral parts of the Prepackaged Plan, (b) fair, equitable, and reasonable, (c) given for valuable consideration, and (d) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all Persons and Entities, to the extent provided therein. Pursuant to Article XIII.G. of the Prepackaged Plan, unless otherwise provided in the Prepackaged Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.

32. **Waiver of Avoidance Actions.** Pursuant to Article IV.R. of the Prepackaged Plan, effective as of the Effective Date, notwithstanding anything to the contrary herein, the Debtors shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under sections 547 of the Bankruptcy Code.

33. **Indemnification Obligations.**

a. Subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, applicable law, or other applicable agreement as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of any Debtor at any time prior to the Effective Date, except Jack L. Watts and Stuart I. Oran, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged,

44

irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Petition Date. Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

b.     After the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date, except Jack L. Watts and Stuart I. Oran, shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

34.     **Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code, shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a chapter 11 case for a Debtor shall be closed and each Debtor shall pay any such fees as if no substantive consolidation has occurred for purposes of the Prepackaged Plan.

35.     **Payment of Commitment Letters and Exit Facility Fees.** To the extent not previously paid, the Debtors and Reorganized Debtors shall, as applicable, pay all fees, charges, and other amounts referred to in the Commitment Letters and Exit Facility Documents as and when due, including, without limitation, all fees owed under the Exit Facility Documents to the Exit Facility Agent.

45

36.     **Payment of Indenture Trustee Fees.** Pursuant to Articles II.B. and VI.E of the Prepackaged Plan, the Reorganized Debtors shall pay all reasonable fees, costs, and expenses of the Indenture Trustee, including, without limitation, the reasonable fees and expenses of the Indenture Trustee's professionals. Such claims of the Indenture Trustee shall be paid as provided in the Prepackaged Plan and the Indenture Trustee shall not be required to file an application for allowance of an Administrative Claim or any other fee application with respect to such claims.

37.     **Intercompany Claims.** Notwithstanding anything to the contrary herein, on or after the Effective Date, any debts held by a Debtor against another Debtor shall be Reinstated.

38.     **Compliance with Tax Requirements.** Each Holder of an Allowed Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under the Prepackaged Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations. The Reorganized Debtors and the Disbursing Agent are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

K&E 13418075.14

39. **Exemption from Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

40. **Documents, Mortgages, and Instruments.** Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Prepackaged Plan and this Confirmation Order.

41. **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur, including, without limitation, (i) the validity of any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors to the Exit Facility Agent and Exit Facility Lenders under the Exit Facility Documents, or (ii) the validity and enforceability of the Exit Liens. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or

47

undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Prepackaged Plan or any amendments or modifications thereto. Specifically, notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors under the Exit Facility Documents (prior to written notice to the respective Exit Facility Lenders of the effective date of such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of this Confirmation Order and the Prepackaged Plan or any amendments or modifications thereto, and the Exit Facility Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the Exit Facility Documents.

42.    **Retention of Jurisdiction.** Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Prepackaged Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XII of the Prepackaged Plan; provided that, subsequent to the Effective Date, this Court shall not retain jurisdiction over (i) the exercise of any rights or remedies by the Exit Facility Agent or the Exit Facility Lenders under the Exit Facility Documents or (ii) the determination of any controversies or disputes relating thereto.

43.    **Provisions of Prepackaged Plan and Confirmation Order Nonseverable and Mutually Dependent.** The provisions of the Prepackaged Plan and this Confirmation Order,

48

including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

44.  **Modifications.**  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other documents that are necessary to effectuate the Prepackaged Plan (including, without limitation, the Exit Facility Documents), that do not materially modify the terms of such documents and are consistent with the Prepackaged Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Prepackaged Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, with the consent of Wayzata and GECC (solely as to the provisions which in GECC's reasonable judgment affect, or could be reasonably expected to affect, GECC's rights, claims and/or interests), to alter, amend, or modify materially the Prepackaged Plan and the Plan Supplement with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Prepackaged Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Prepackaged Plan. Any such modification or supplement shall be considered a modification of the Prepackaged Plan and shall be made in accordance with Article XI of the Prepackaged Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Prepackaged Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

49

45. **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit to the Prepackaged Plan or Plan Supplement (including the Exit Facility Documents) provides otherwise (in which case the governing law specified therein shall be applicable to such Exhibit), pursuant to Article I.D. of the Prepackaged Plan, the rights, duties, and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws.

46. **Applicable Non-bankruptcy Law.** Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Prepackaged Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

47. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

48. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

50

49. **Notice of Confirmation Order.** In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form annexed hereto as Exhibit B, to all parties who hold a Claim or Equity Interest in the Chapter 11 Cases, including the Informal Noteholders' Committee, those parties who have requested service of papers under Bankruptcy Rule 2002, and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

50. **Substantial Consummation.** On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

51. **Waiver of Stay.** The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

52. **Effect of Conflict Between the Prepackaged Plan and Confirmation Order.** If there is any inconsistency between the terms of the Prepackaged Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

53. **No Waiver.** The failure to specifically include any particular provision of the Prepackaged Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: October 14, 2008
Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge

51